## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CURTIS EUGENE HORTON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-11-401-F** |
| | ) | |
| **TERRY MARTIN,**[1] | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Petitioner, a state prisoner appearing *pro se*, brings this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Respondent has filed a response to the Petition and filed the relevant state court Trial Transcript (T. Tr.) and the Original Record (O.R.). Petitioner has filed a Reply, and the matter is at issue. For the following reasons, it is recommended that the Petition be denied.

## <u>Procedural History</u>

In the District Court of Caddo County, Case No. CF-2007-176, Petitioner was convicted of assault and battery with a deadly weapon and sentenced to 35 years imprisonment. *See* O.R., p. 283.[2] Petitioner filed a direct appeal, and the Oklahoma Court

---

[1]The Petition named former Warden Jane Standifird as the Respondent; however, Warden Terry Martin is currently the warden with custody over Petitioner and has therefore been substituted as the proper respondent in this matter.

[2]Petitioner was charged with shooting with intent to kill and the jury was instructed that it
(continued...)

of Criminal Appeals (OCCA) affirmed.  *See* Response, Ex. 3.

## **Petitioner's Claims**

Petitioner raises six grounds for habeas relief.  In Grounds One and Two, Petitioner alleges that the trial court erred in failing to instruct the jury that it must weigh the voluntariness of Petitioner's custodial statements and in admitting Petitioner's custodial statements.  *See* Petition, pp. 3-4.  In Ground Three, Petitioner argues that interjection of hearsay testimony violated his rights under the Confrontation Clause.  *Id.*, p. 5.  Petitioner asserts in Ground Four that his trial attorney was ineffective and in Ground Five that his sentence is excessive.  *Id.*, pp. 6-7.  Finally, in Ground Six, Petitioner alleges cumulative trial court errors.  *See id.*, p. 8.

Petitioner incorporates his state appellate direct appeal brief and notes that while that document relies on both state and federal constitutional violations, the focus of his habeas petition is on violations of the federal constitution.  *See* Petition, pp. 3-4.

## **Testimony at the Jury Trial**

The relevant testimony established that in the early morning hours of September 23, 2007, Petitioner and his estranged wife, Linda Horton, had a confrontation, and a gun held by Petitioner went off and severely wounded Ms. Horton.  *See* T. Tr. Vol. I, pp. 107-111, 209-213, 222-23, 227-35.  After having been read his *Miranda* rights, Petitioner told an

---

[2](...continued)
could find Petitioner guilty of that crime, or either of the lesser included crimes of assault and battery with a deadly weapon and assault and battery with a dangerous weapon by use of a firearm. *See* O.R., pp. 1, 241, 244-46.

officer that Ms. Horton had "grabbed toward the gun and the gun went off." *Id.*, p. 178.  At trial, Petitioner admitted that he had the gun in his hand but reiterated that it only fired when his wife "slapped the gun." *Id.*, Vol. II, pp. 74-75.  However, Ms. Horton and an eye-witness both testified that she did not grab at or touch the gun and was in fact "begging for her life" when Petitioner pulled the trigger.  *Id.*, Vol. I, pp. 110, 212, 229, 238.

Testimony also established that in the hours before the incident, Petitioner had been drinking heavily and had smoked some marijuana but was capable of carrying on a calm and rational conversation.  *Id.*, pp. 101, 113, 117, 124, 154, 187-88, 192, 237; *Id.*, Vol. II, pp. 44-45.

## Standard Governing Habeas Review

When the OCCA denies a claim on the merits, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides the standard.  "[The AEDPA] reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 786 (2011) (citation omitted).  Thus, habeas relief may be granted only if the OCCA's adjudication of the merits of a federal claim has resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ."  28 U.S.C. § 2254(d)(1).  Further, judicial review is directed to the result of the OCCA's decision, not its reasoning. *See Harrington v. Richter*, 131 S. Ct. at 784 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an

opinion from the state court explaining the state court's reasoning."). Thus, even "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.*

A decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). A decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "AEDPA's conception of objective unreasonableness lies 'somewhere between clearly erroneous and unreasonable to all reasonable jurists.'" *House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008) (quoting *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006)). Thus, the AEDPA imposes "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, __U.S.__, 131 S.Ct. 1388, 1398 (2011) (citations and internal quotation marks omitted). The AEDPA further mandates that factual findings made by a state trial or appellate court are presumed correct and may be rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

4

**Analysis**

## I. Ground One - Failure to Instruct the Jury

In Oklahoma, both the trial court and the jury are required to find a *Miranda* waiver or confession voluntary before the statement can be relied upon. *See Parent v. State*, 18 P.3d 348, 351-52 (Okla. Crim. App. 2000). In the instant case, no such instruction was requested and the jury was not so instructed. *See* O.R., pp. 220-48. Petitioner alleges in Ground One that the trial judge erred in failing to direct the jury to weigh the voluntariness of Petitioner's statement to the police in light of his intoxication. Petition, p. 3. The undersigned concludes that habeas relief is not warranted on this claim.

Although required by state law, a jury's duty to determine the voluntariness of a custodial statement is not based on the federal constitution. *See Lego v. Twomey*, 404 U.S. 477, 489-90 (1972) (rejecting petitioner's argument that he had a constitutional right to have both the trial court and the jury decide if his confession was voluntary and therefore admissible at trial).[3] Thus, because this Court is generally not concerned with violations of state law, Petitioner cannot prevail on his claim unless the failure to give such instruction was "'so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (citation omitted). Moreover, "the burden on a petitioner attacking a state court judgment based on a refusal to give a . . . jury instruction is especially great because '[a]n omission, or an incomplete instruction, is less

---

[3]Of course, a jury is always free to consider the circumstances surrounding a confession in determining its credibility. *See Crane v. Kentucky*, 476 U.S. 683, 688 (1986).

likely to be prejudicial than a misstatement of the law.'"  *Tyler v. Nelson*, 163 F.3d 1222, 1227 (10th Cir. 1999) (citation omitted).

Petitioner's claim is invalid for two reasons.

First, the OCCA held that the trial court's failure to give the relevant instruction did not constitute plain error.[4]  *See* Response, Ex. 3 at p. 2.  Because this instruction involved only state law, the Court is bound by the OCCA's determination that the jury was properly instructed.  *See Chapman v. LeMaster*, 302 F.3d 1189, 1196 (10th Cir. 2002) (holding that where instruction involved a question of state law, federal court was bound by state appellate court's finding that the jury was properly instructed).

Second, Petitioner has failed to show that the absence of such instruction rendered the trial fundamentally unfair.  The evidence at trial established that while Petitioner may have been intoxicated, he was capable of calm, rational conversation and his *Miranda* waiver was constitutionally valid.  *See infra*, pp. 8-9.  Further, Petitioner's testimony at trial was essentially the same as his statement to the police officer, that the gun fired accidentally when the victim slapped or grabbed at the weapon.  Thus, even if the jurors had been instructed to consider the validity of the *Miranda* waiver, and even if they had believed the waiver to be invalid and the statement to the police officer unreliable, the exact same evidence would have been before them as the result of Petitioner's testimony.  Consequently, the absence of the instruction could not have rendered the trial fundamentally unfair.

---

[4]The OCCA found that counsel failed to request the instruction and failed to object to the instructions given.  *See* Response, Ex. 3 at p. 2.

Thus, there is no basis for finding a violation of due process, and the undersigned recommends that habeas relief be denied as to the claim in Ground One.

## II.  Ground Two - Lack of Voluntary *Miranda* Waiver

In Ground Two, Petitioner alleges that the trial court erred in admitting the statements he made to the police officer on grounds that Petitioner was too intoxicated to waive his *Miranda* rights.  Petition, p. 4.  Petitioner invokes his "privilege against self-incrimination and the right to a fundamentally fair trial."  *Id.*  The undersigned recommends denial of habeas relief on this claim.

Petitioner made the same argument on direct appeal, and the OCCA concluded that "there was sufficient evidence to show that the Miranda waiver and the statements were given voluntarily."  Response, Ex. 3, p. 2.  This decision was reasonable,[5] precluding habeas relief.

Under the Fourteenth Amendment's Due Process Clause, the relevant question is "'whether . . . [Petitioner's] will was overborne' by the circumstances surrounding the giving of a confession."  *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).  This analysis must take into consideration "'the totality of all the surrounding circumstances - both the characteristics of [Petitioner ] and the

_____

[5]The OCCA did not cite to federal law and did not articulate the standard for a claim involving the voluntariness of a *Miranda* waiver.  *See* Response, Ex. 3. pp. 2-3.  Nevertheless, "state courts need not refer to, or even be aware of, controlling Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'"  *Matthews v. Workman*, 577 F.3d 1175, 1183 n.2 (10th Cir. 2009) (citations omitted), *cert. denied*, __ U.S. __, 130 S. Ct. 1900 (2010).

details of the interrogation.'"  *Id.* (citing *Schneckloth v. Bustamonte*, 412 U.S. at 226).

Under the Fifth Amendment, the Court considers the voluntariness of Petitioner's waiver of his right to remain silent.  *See Moran v. Burbine*, 475 U.S. 412, 421 (1986).  For this question, the Court must determine whether:  (1) the waiver was "a free and deliberate choice" rather than the product of "intimidation, coercion, or deception," and (2) Petitioner was fully aware of the nature of his rights and the consequences of abandonment.  *Id.*  Again, the "'totality of the circumstances'" must reveal a voluntary waiver.  *Id.* (citing *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)).

Although Petitioner invokes both constitutional provisions, he does not allege any facts or make any arguments to suggest that his will was overborne by the police questioning or that he was intimidated, coerced or deceived.  *See* Petition, p. 4; *see also* Response, Ex. 1, pp. 8-10.  Instead, Petitioner relies solely on his intoxication to argue that he was unable to fully understand his rights and the consequences of abandoning those rights.  *See* Response, Ex. 1 at pp. 8-10.  However, "[t]he state of intoxication does not automatically render a [*Miranda* waiver] involuntary."  *United States v. Muniz*, 1 F.3d 1018, 1022 (10th Cir. 1993).

At a pre-trial hearing, Apache police officer Anthony Porter testified that he had informed Petitioner that he had the right to remain silent and the right to an attorney.  *See* T. Tr. Vol. I, pp. 6, 9.  Officer Porter testified that Petitioner stated that he understood his rights, and agreed to make a statement.  *See id.*, p. 10.  At trial, Officer Porter testified that Petitioner had in fact been "screaming that he wanted to tell his side of the story."  *Id.*, p.

8

187.  Officer Porter agreed that he had 15 years experience dealing with "really drunk people," and stated that he had found Petitioner "very calm" once they began speaking.  *Id.*  The officer reiterated that Petitioner had been able to carry on a conversation "in a calm tone."  *Id.*, pp. 187-88.

Terry Panther, Molly Gaddis, Dale Wilcox, Calvin Wilcox, and Linda Horton also testified regarding Petitioner's level of intoxication.  All agreed that while it was clear Petitioner had been drinking, he "was pretty calm," "seemed fine," "was able to communicate," was not slurring his speech, appeared "normal," "was still of sound mind and . . . pretty sound demeanor," was carrying on a "friendly conversation," and was not so drunk that "he didn't know what he was doing."  *Id.*, pp. 101, 113, 117, 124, 154, 192, 237.

Petitioner himself testified that he while he had ingested a lot of alcohol and had smoked "a little marijuana," he was "used to drinking" and could "function when [he] drank."  T. Tr. Vol. II, pp. 44-45.  Petitioner also agreed that he could recall everything "clearly."  *Id.*, p. 48.  Finally, Petitioner testified that after "see[ing] red" and having the gun discharge, he then "became cognitive" of what was happening.  *Id.*, p. 82.

Based on this evidence and the totality of the circumstances, Petitioner has failed to demonstrate that he was not fully aware of the nature of his rights and the consequences of abandonment so as to make the OCCA's finding an unreasonable application of federal law.  Consequently, the undersigned recommends denial of habeas relief on Ground Two.

## III.  Ground Three:  Interjection of Hearsay Testimony

In his defense, Petitioner called a character witness who testified that Petitioner did

not "have violent characteristics." T. Tr. Vol. I, p. 10. On cross-examination, the prosecutor was allowed to ask the witness if she was aware that Petitioner had once been accused of holding a girlfriend to the ground, threatening to kill her, and beating her head on the ground. *Id.*, pp. 14-15. The prosecutor's information was gathered from police reports generated in connection with that incident. *Id.*, p. 14.

Petitioner alleges in Ground Three that the improper interjection of this hearsay testimony violated his rights under the Confrontation Clause. Petition, p. 5. On direct appeal, the OCCA held that the evidence was admissible as "a proper method of impeaching the character witness." Response, Ex. 3 at p. 3. The undersigned concludes that habeas relief is not warranted on this claim.

The Sixth Amendment Confrontation Clause guarantees an accused the right "to be confronted with the witnesses against him" and secures the right to cross-examination. U.S. Const. amend. VI; *see Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). However, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004) (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)). In other words, the relevant statement must actually qualify as "hearsay" before the Confrontation Clause is implicated. *See id.*; *see also United States v. Faulkner*, 439 F.3d 1221, 1226 (10th Cir. 2006).

In the instant case, the prosecutor was not attempting to prove that Petitioner actually committed the alleged acts against a prior girlfriend; instead, the State was attempting to impeach Petitioner's character witness who had just testified to Petitioner's non-violent

nature.  *See* T. Tr. Vol. II, pp. 13-16.  That information was therefore not "hearsay."  *See Primeaux v. State*, 88 P.3d 893, 902 (Okla. Crim. App. 2004) (defining "hearsay" and noting that when statements are not intended to prove the matter asserted they are generally admissible); *see also* Okla. Stat. tit. 12 § 2404(A)(1) (allowing evidence of a defendant's character "to rebut the same").  Accordingly, the non-hearsay statements did not violated the Confrontation Clause, and the undersigned recommends denial of habeas relief on Ground Three.

## IV.  Ground Four:  Ineffective Assistance of Trial Counsel

In Ground Four, Petitioner alleges ineffective assistance of trial counsel.  Petition, p. 6.  Specifically, Petitioner blames his attorney for failing to request the jury instruction directing the jurors to decide the voluntariness of Petitioner's statement to the police in light of his intoxication.  *See id.*

Under *Strickland v. Washington*, 466 U.S. 668 (1984), a counsel's performance is not constitutionally ineffective unless it was both deficient and prejudicial.  *See id.* at 688, 692. Prejudice is shown if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  Recently, the Supreme Court has reiterated that on federal habeas review, the question is not whether counsel's performance fell below the *Strickland* standard, but whether the OCCA's adjudication of a *Strickland* claim was unreasonable.  *See Harrington v. Richter*, 131 S. Ct. at 785.

On direct appeal, the OCCA found that Petitioner had failed to establish a reasonable

probability that the outcome of the trial would have been different if trial counsel had requested the relevant instruction. *See* Response, Ex. 3, p. 3. That decision was reasonable. As previously discussed, the jurors heard Petitioner's testimony at trial which involved essentially the same statements he made to the police officer. Thus, even if jurors had been instructed that they could discount or even disregard Petitioner's statement to the officer, and even if they had in fact disregarded that statement, there is no reasonable probability that the outcome of the trial would have been different. Consequently, habeas relief is unavailable on a theory of ineffective assistance of counsel.

## V.  Ground Five:  Excessive Sentence

Petitioner alleges in Ground Five that his 35-year sentence is excessive. Petition, p. 7. The OCCA rejected this claim on direct appeal, *see* Response, Ex. 3, p. 3, and Petitioner argues that the OCCA's decision was based on an "unreasonable determination of the facts" in light of his testimony that the "victim attempted to slap the gun out of Petitioner's hand, causing the firearm to discharge." Petition, p. 7.[6]  The undersigned recommends denial of habeas relief on Ground Five.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."

---

[6]Petitioner also argues in part that the excessive sentence was caused by the lack of instruction to the jury regarding their duty to consider the voluntariness of his statement to the police. Petition, p. 7. This theory is without merit. Because the jury heard Petitioner's testimony that the gun fired accidentally when the victim slapped or grabbed it which was essentially the same statement he made to the officer, there is no reason to believe that the sentence recommendation would have been any different with an instruction to consider the voluntariness of Petitioner's statements to the officer. Thus, Petitioner has not demonstrated that his trial was fundamentally unfair in this regard.

U.S. Const. Amend. VIII.   "Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'"   *Graham v. Florida*, __ U.S. __, 130 S. Ct. 2011, 2021 (2010) (citing *Weems v. United States*, 217 U.S. 349, 367 (1910)).   However, the proportionality requirement is "'narrow'" and merely "'forbids only extreme sentences that are grossly disproportionate to the crime.'"   *Id.* (citation omitted).

To determine if a sentence is "grossly disproportionate," the Court must compare the gravity of the offense and the severity of the sentence.   *Id.*   "Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment."   *United States v. Gillespie*, 452 F.3d 1183, 1190 (10th Cir. 2006) (citation omitted).   Only on rare occasions will the crime and the sentence bear a gross disproportion to one another.   *See United States v. Gurule*, 461 F.3d 1238, 1247 (10th Cir. 2006).   And only in these extraordinary circumstances will the sentence will be considered unconstitutional.   *See Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) ("The gross disproportionality principle reserves a constitutional violation for only the extraordinary case.").

Here, the prosecution presented testimony from more than one witness that: (1) Petitioner aimed the gun at Linda Horton, (2) Ms. Horton did not touch, grab or slap at the weapon and in fact was begging Petitioner not to shoot, and (3) Petitioner fired the gun into Ms. Horton's hip causing significant injury.   For this crime, Petitioner could have been sentenced to life imprisonment.   *See* Okla. Stat. tit. 21 § 652(C).

In light of the evidence, Petitioner has not demonstrated that his 35-year sentence was grossly disproportionate to his crime, or that the OCCA unreasonable applied the facts in rejecting his claim on direct appeal.  Habeas relief should be denied on this claim.

## VI.  Ground Six:  Cumulative Error

In his final ground for relief, Petitioner alleges that the cumulative trial errors deprived him of a fundamentally fair trial.  Petition, p. 8.  Petitioner raised the same claim on direct appeal, and the OCCA held that "there is no individual error, thus no error to review under cumulative error review."  Response, Ex. 3 p. 3.  The undersigned finds this holding reasonable and recommends denial of habeas relief.

"Cumulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors."  *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998).  The undersigned has found no error among Petitioner's grounds for relief.  Therefore, there is no basis upon which to find cumulative error, and it is recommended that habeas corpus relief be denied on Ground Six.

## RECOMMENDATION

Based upon the foregoing analysis, it is recommended that the Petition for a Writ of Habeas Corpus be denied.

Petitioner is advised of his right to file an objection to this Report and Recommendation in accordance with Fed. R. Civ. P. 72(b)(2).  Any such objection must be filed with the Clerk of this Court by the 20th day of February, 2012.  Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his

right to appellate review of both factual and legal questions contained herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 31st day of January, 2012.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE